**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 13-CV-05091-VEB

KEVIN HIXSON,

                  Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Kevin Hixson applied for Supplemental Security Income ("SSI") Benefits and Disability Insurance Benefits ("DIB") under the Social Security Act in April of 2010. The Commissioner of Social Security denied the applications.

Plaintiff, represented by D. James Tree, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On April 2, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on April 5, 2010, alleging disability beginning March 9, 2008. (T at 137-38, 139-45).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On March 14, 2012, a hearing was held before ALJ Donna W. Shipps. (T at 51). Plaintiff appeared with his attorney and testified. (T at 60-71, 82-84). The ALJ also received testimony from K. Diane Kramer, a vocational expert (T at 71-82, 84-87).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 15.

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

On April 12, 2012, ALJ Shipps issued a written decision denying the applications and finding that Plaintiff was not entitled to benefits under the Social Security Act. (T at 18-40). The ALJ's decision became the Commissioner's final decision on June 21, 2013, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-6).

On August 19, 2013, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on November 19, 2013. (Docket No. 13).

Plaintiff filed a motion for summary judgment on January 28, 2014. (Docket No. 16). The Commissioner moved for summary judgment on March 10, 2014. (Docket No. 17). Plaintiff filed a reply memorandum of law on March 24, 2014. (Docket No. 18). As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 7).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is closed.

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**C.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 9, 2008, the alleged onset date, and met the insured status requirements of the Social Security Act through December 31, 2013. (T at 23). The ALJ determined that Plaintiff's severe left leg fracture, back pain (due to removal of a portion of the latissimus dorsi), ulcerative colitis, hematochezia, and kidney stones were impairments considered "severe" under the Act. (Tr. 23-25).

However, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments set forth in the Listings. (T at 25).  The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR § 416.967 (b), except that he would need to alternate positions between sitting and standing.  The ALJ concluded that Plaintiff could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; but would need to avoid exposure to hazards and concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (T at 25-33).

The ALJ concluded that Plaintiff could perform his past relevant work as a customer service representative. (T at 34-35). In the alternative, the ALJ found that even if Plaintiff could not perform his past relevant work, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform.

(T at 34-35). Accordingly, the ALJ found that Plaintiff was not disabled, as defined under the Act, from March 9, 2008 through April 12, 2012 (the date of her decision) and was therefore not entitled to benefits. (T at 35). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

## D.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. He offers four (4) main arguments in support of this position. First, Plaintiff argues that the ALJ's analysis of his medical providers' opinions was flawed. Second, Plaintiff challenges the ALJ's credibility assessment. Third, Plaintiff contends that the ALJ's step four (past relevant work) analysis is not adequately supported. Fourth, Plaintiff challenges the ALJ's alternative step five findings. This Court will address each argument in turn.

## IV. ANALYSIS

## A.    Medical Provider Opinions

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*,

379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Historically, the courts have recognized conflicting medical evidence, and/or the absence of regular medical treatment during the alleged period of disability, and/or the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs*., 44 F.3d 1453, 1463-64 (9th Cir. 1995).

### 1.    Dr. Bassett

In March of 2010, Dr. Gerald Bassett, a treating gastroenterologist, completed a physical evaluation form.  Dr. Bassett opined that Plaintiff's diarrhea (a symptom of his ulcerative colitis) would cause a moderate limitation with regard to Plaintiff's ability to perform basic work activities. (T at 234).

The ALJ discussed Dr. Bassett's opinion, but did not specifically state how much weight she assigned to the doctor's assessment. (T at 30).  The ALJ's RFC determination did not include any special limitations concerning Plaintiff's diarrhea. (T at 25.  Indeed, by concluding that Plaintiff could perform work with "normal breaks," the ALJ implicitly rejected any assessment that Plaintiff's diarrhea imposed a significant work-related limitation. The ALJ's failure to state specifically how much weight was given to Dr. Basset's opinion was error.[2]  However, this Court finds Dr. Bassett's opinion, considered in context, provides a more than adequate basis for the ALJ's finding that ulcerative colitis did not cause any material limitations with respect to Plaintiff's ability to perform basic work-related activities.

Although Dr. Bassett opined that Plaintiff's ulcerative colitis would interfere with his ability to perform basic work activities, the physician also concluded that

---

[2] The ALJ is obliged to state the weight assigned to treating source opinions.  However, as discussed above, any error in not assigning specific weight to Dr. Bassett's opinion was harmless because the evidence supports the ALJ's conclusion even if the opinion is credited. *See Farnacio v. Astrue*, No. 11-CV-065, 2012 U.S. Dist. LEXIS 130913, at *23 (E.D. Wa. Sep't 12, 2012)("As a result, any error in not assigning weight to or rejecting Dr. Howlett's opinion is harmless error because the evidence supports the ALJ's 'not disabled' finding even if Dr. Howlett's opinion is credited.")(citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)). Moreover, it is obvious that the ALJ afforded some weight to the treating source even though not assigning it.  It is significant here that the ALJ discussed Dr. Bassett's opinion at length and clearly considered his assessment (and treatment notes) in reaching the conclusion that Plaintiff's symptoms were not disabling.  Nevertheless, ALJ's are not excused from assigning weight when required by the Regulations and case law.

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

Plaintiff could perform sedentary work. (T at 318).  In addition, Dr. Bassett's treatment notes document a significant improvement in Plaintiff's condition following treatment.  In April of 2010 (a month after his assessment), Dr. Bassett noted that Plaintiff had begun taking sulfasalazine tablets and reported that his symptoms "dramatically improved" within a week. (T at 314).  Plaintiff no longer saw any blood in his stool, had little pain, and no significant rectal urgency. (T at 314).  He had a good appetite and reported no side effects from the medication. (T at 314).   In July 2011, Dr. Bassett described Plaintiff's ulcerative colitis as "in remission" and reported that Plaintiff denied "any rectal urgency, diarrhea, or abdominal pain or distress." (T at 422).   When Plaintiff had an increase in symptoms, he used the sulfasalazine tablets. (T at 422).  Although the ALJ should have stated how much weight was afforded to Dr. Bassett's opinion, she discussed the physician's findings in detail (T at 30-31) and those findings (and, in particular, the treatment notes following the initial assessment) were generally supportive of the ALJ's conclusion that Plaintiff's diarrhea was not disabling.

### 2.      Dr. Asriel

In September of 2010, Dr. John Asriel, a treating family physician, noted that Plaintiff was "limited with ambulation and lifting due to [a] knee injury." (T at 487). He opined that Plaintiff was limited to lifting 10 pounds and could not walk more

than 4 hours per day. (T at 487).  Dr. Asriel assessed no limitation as to motor use, hand use, or sitting work. (T at 487).  In a functional assessment, Dr. Asriel opined that Plaintiff could stand for 4 hours in an 8-hour workday, sit for 8 hours in an 7-hour work day, lift 10 pounds frequently, and was limited by reduced arm/leg strength, pain, and occasional severe diarrhea. (T at 456-57).

The ALJ assigned "little weight" to Dr. Asriel's opinion, finding it inconsistent with the overall medical record. (T at 31).  This Court finds the ALJ's decision consistent with applicable law and supported by substantial evidence. In particular, Dr. Asriel's opinion was contradicted by the findings of other medical providers, including treating and examining physicians.  For example, as discussed in greater detail below, Dr. Henley, a treating orthopedist, opined that Plaintiff was "clearly employable in a light to moderate-duty capacity" (T at 226) and Dr. Pace, an examining orthopedic resident physician, reported that Plaintiff walked with an "almost non-antalgic gait" and opined that it was "reasonable to think that there are several things that he could do for a career over the course of his life" (T at 224).

In December of 2009, Dr. Bradford Henley, a treating orthopedist, opined that Plaintiff was "clearly employable in a light to moderate-duty capacity," although he might have difficulty on his feet climbing stairs or ladders or walking on uneven surfaces. (T at 226).  Dr. Henley declined Plaintiff's request to complete a disability

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

assessment, noting that he was "unlikely" to find that Plaintiff met the "criteria." (T at 226). Dr. Henley reported that Plaintiff had a "minimally to almost non antalgic gait." (T at 226). Although Plaintiff had some limited range of motion in his ankle, Plaintiff's examination results by Dr. Henley were largely unremarkable. (T at 226).

During the same month, Dr. James Lee Pace, an examining orthopedic resident physician, reported that Plaintiff walked with an "almost non-antalgic gait" and opined that it was "reasonable to think that there are several things that he could do for a career over the course of his life." (T at 224). Although the range of motion in Plaintiff's ankle was "not normal," he was "able to walk without significant impairment." (T at 224). Dr. Pace noted that Plaintiff complained that it was difficult to "unload some of the heavy freight" required at a previous job, but reported that he was considering "some other forms of employment." (T at 224). Plaintiff said he could walk independently, but had "difficulty with higher-stress activities." (T at 224). X-ray results were unremarkable, showing a well-healed fracture. (T at 224). Additional x-rays, taken in January 2012, were also unremarkable. (T at 496-97).

The ALJ afforded these opinions "significant weight." (T at 28).

Plaintiff argues that the ALJ should have afforded greater weight to Dr. Asriel's opinion and lesser weight to the assessments of Dr. Pace and Dr. Heneley.

However, it is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Given the consistency between the Pace/Heneley opinions and the medical record, including their examinations and review of x-rays, the Commissioner's conclusion is adequately supported and should not be disturbed.

### 3.       Dr. Ankov

Dr. Donald Ankov, a non-examining State Agency review physician, opined that Plaintiff's impairments likely equaled the impairment set forth a § 5.06 of the Listings (inflammatory bowel disease). (T at 455). He also concluded that Plaintiff needed to be near a bathroom and was restricted to sedentary work by his muscle reconstruction and ulcerative colitis. (T at 442).

The ALJ afforded "little weight" to Dr. Ankov's opinion. (T at 33). This Court finds no error in the ALJ's assessment. Listing § 5.06 requires proof of either:

(A) "[o]bstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period" or (B) two of the following (despite continuing treatment as prescribed) within the same consecutive 6-month period: (1) anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; (2) serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; (3) clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; (4) perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; (5) involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or (6) need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

Dr. Ankov, who did not treat Plaintiff and evidently did not examine him, did not provide any explanation as to why he concluded that Plaintiff met the

requirements of Listing § 5.06. The ALJ is not obliged to accept a medical opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Critically, Dr. Ankov did not cite to any medical findings satisfying the Listing § 5.06. Notably, while Plaintiff criticizes the ALJ for discounting Dr. Ankov's opinion, he does not offer any theory or cite any evidence in the record to even arguably suggest that the Listing § 5.06 requirements were satisfied. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(affirming ALJ's Listings analysis where claimant offered no plausible theory and cited no evidence in support of suggestion that impairment met or medically equaled a Listing impairment). Indeed, as discussed above, clinical notes from Dr. Bassett, a treating physician, document a significant improvement in Plaintiff's bowel condition following treatment. (T at 314, 422). This Court finds no error in the ALJ's assessment of Dr. Ankov's non-examining opinion.

### 4.    Ms. Fusfield/Mr. Reyes

In March of 2010, Marla Fusfield, a treating nurse practitioner, completed a physical evaluation form. She opined that Plaintiff's ulcerative colitis would cause marked to severe interference with Plaintiff's ability to perform basic work-related activities. (T at 238). Ms. Fusfield reported that Plaintiff would need to have a

bathroom close by. (T at 238). She also assessed marked limitation as to standing, walking, and carrying due to muscular reconstruction. (T at 238). Ms. Fusfield opined that Plaintiff could perform sedentary work. (T at 238).

In August of 2011, Jose Reyes, another treating nurse practitioner, completed a medical evaluation. Mr. Reyes opined that Plaintiff could sit for prolonged periods, lift a maximum of 20 pounds, and frequently lift/carry 10 pounds. (T at 458). He found that participation in training or employment activities was appropriate. (T at 459).

In October of 2011, Mr. Reyes opined that Plaintiff would need to lie down 2 to 3 times per day for 30 to 45 minutes at a time and would likely miss 4 or more workdays per month. (T at 466-67).

In evaluating a claim, the ALJ must consider evidence from the claimant's medical sources. 20 C.F.R. §§ 404.1512, 416.912. Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1502. Medical sources classified as "not acceptable" include nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p.

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

The opinion of an acceptable medical source is given more weight than an "other source" opinion. 20 C.F.R. §§ 404.1527, 416.927. For example, evidence from "other" sources is not sufficient to establish a medically determinable impairment. SSR 06-03p. However, "other source" opinions must be evaluated on the basis of their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions, and whether the other source is "has a specialty or area of expertise related to the individual's impairment." See SSR 06-03p, 20 CFR §§404.1513 (d), 416.913 (d). The ALJ must give "germane reasons" before discounting an "other source" opinion. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ afforded Ms. Fusfield's "some weight." (T at 30). She gave "significant weight" to Mr. Reyes's August 2011 findings and "little weight" to his October 2011 opinion. (T at 31-32). This Court finds that the ALJ's assessment of these "other source" opinions was supported by germane reasons Ms. Fusfield's opinion was rendered after only one visit with Plaintiff. (T at 238). She opined that Plaintiff could perform sedentary work and her actual treatment notes contradict the suggestion of disabling impairments. For example, in a March 2010 note, Ms. Fusfield reported that Plaintiff "probably cannot [engage] in heavy lifting," but "[c]ould do a job in which lifting and rapid maneuvering [are] not required." (T at

494).   Mr. Reyes's October 2011 opinion was contradicted by his August 2011

opinion and by the assessments of Dr. Pace (an examining physician) and Dr.

Heneley (a treating physician).[3]  In addition, Mr. Reyes's examination of Plaintiff's

musculoskeletal system was normal. (T at 409).  The ALJ noted that Plaintiff was

treated for various ailments between August and October of 2011, with nothing

remarkable noted about his musculoskeletal symptoms or situation. (T at 32).

For the reasons stated above, the ALJ provided germane reasons for her

assessment of these "other source" opinions and her overall RFC determination is

supported by substantial evidence, including treatment notes, clinical findings, and

examining and treating physician opinions.

## B.    Credibility

A claimant's subjective complaints concerning his or her limitations are an

important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the

claimant's credibility must be supported by specific cogent reasons. *Rashad v.*

*Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of

---

[3]  In his August opinion, Mr. Reyes found that participation in training or employment activities
was appropriate. (T at 459). In addition, as discussed in greater detail above, Dr. Henley, a treating
orthopedist, opined that Plaintiff was "clearly employable in a light to moderate-duty capacity" (T
at 226) and Dr. Pace, an examining orthopedic resident physician, reported that Plaintiff walked
with an "almost non-antalgic gait" and opined that it was "reasonable to think that there are several
things that he could do for a career over the course of his life" (T at 224).

malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows:

He was involved in a motorcycle accident in July of 1994.  He has had seven reconstructive surgeries on his left leg. (T at 61-62).  Although he returned to work following the accident, Plaintiff eventually began having difficulties with his leg, back, and ulcerative colitis. (T at 62).  He can stand for about half an hour before needing to sit down. (T at 62-63).  Sitting is limited to 45 minutes at a time. (T at 63).  He needs to lie down 3 to 5 times per day due to muscle pain. (T at 64).  The ulcerative colitis flares 3-4 times per month, lasting about 2 days. (T at 65).

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

Significant cramping, diarrhea, and bloody stools occur throughout the flare-ups. (T at 66). He takes medication for ADHD. (T at 67).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that not all of his claims were credible. (T at 26). The ALJ's assessment was supported by substantial evidence. Plaintiff's claims of disabling limitations were contradicted by the evidence outlined above, namely, the contemporaneous treatment notes, clinical findings, and examining and treating physicians' opinions. Dr. Bassett opined that Plaintiff's ulcerative colitis would not prevent him from performing sedentary work. (T at 318). Dr. Bassett's treatment notes document a significant improvement in Plaintiff's condition following treatment. (T at 314, 422). Dr. Henley, a treating orthopedist, opined that Plaintiff was "clearly employable in a light to moderate-duty capacity," although he might have difficulty on his feet climbing stairs or ladders or walking on uneven surfaces. (T at 226). Dr. Pace, an examining orthopedic physician, found it "reasonable to think that there are several things that [Plaintiff] could do for a career over the course of his life." (T at 224).

Plaintiff testified that he stopped working when the company he was working for "went under." (T at 69). The fact that a claimant stopped working for reasons

other than the alleged impairments is a valid reason for the ALJ to discount the claimant's credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

In sum, where, as here, substantial evidence supports the ALJ's credibility determination, this Court may not overrule the Commissioner's interpretation even if "the evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d 747, 750 (9th Cir. 1989); *see also Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner].").

## C.    Step Four Analysis

"Past relevant work" is work that was "done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a).  At step four of the sequential evaluation, the ALJ makes a determination regarding the claimant's residual functional capacity and determines whether the claimant can perform his or her past relevant work. Although claimant bears the burden of proof at this stage of the evaluation, the ALJ must make factual findings to support his or her conclusion. *See* SSR 82-62. In particular, the ALJ must compare the claimant's RFC with the physical and mental demands of the past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

In sum, the ALJ must determine whether the claimant's RFC would permit a return to his or her past job or occupation. The ALJ's findings with respect to RFC and the demands of the past relevant work must be based on evidence in the record. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). The Regulations provide that a vocational report and the claimant's testimony should be consulted to define the claimant's past relevant work as it was actually performed. *Id.*; SSR 82-61, 82-41. With respect to the question of how the claimant's past relevant work is generally performed, the "best source" is "usually" the *Dictionary of Occupational Titles* ("DOT"). *See id.*, 20 CFR §§ 404.1566 (d) and 416.966 (d).

Here, the ALJ concluded that Plaintiff could perform his past relevant work as a customer service representative, as that job was actually performed by Plaintiff and as it is generally performed in the national economy. (T at 34). The ALJ's finding at this stage of the sequential evaluation was based on testimony from K. Diane Kramer, a vocational expert. Ms. Kramer had reviewed the *Dictionary of Occupational Titles* and had considered Plaintiff's Work History Report and testimony concerning his past relevant work. (T at 83-84). Plaintiff's Work History Report contained a detailed description of the demands involved in his past relevant work. (T at 175-78). Plaintiff also testified at length about his past relevant work. (T at 73-81).

The ALJ asked the vocational expert to presume a hypothetical claimant with limitations consistent with Plaintiff's RFC (i.e. someone with the ability to perform light work, as defined in 20 CFR § 416.967 (b), except that he would need to alternate positions between sitting and standing, could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; but would need to avoid exposure to hazards and concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (T at 84-85).

The vocational expert opined that such a claimant could perform the past relevant work of customer service representative, both as it was actually performed by Plaintiff and as generally performed (and, in particular, as defined in the DOT). (T at 85).   Plaintiff challenges the ALJ's reliance on the vocational expert's testimony, arguing that the hypothetical should have included additional limitations (e.g. sedentary work, frequent/sudden access to a bathroom, multiple monthly absences, need to lie down).   However, an ALJ is not obliged to accept as true all limitations alleged by the claimant and may decline to include limitations in the vocational expert's hypothetical if they are not supported by sufficient evidence. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  This Court finds no reversible error with respect to the ALJ's reliance on the vocational expert's testimony at step four. *See* 20 C.F.R. §

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

404.1560 (b)("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."). Where, as here, the ALJ and vocational expert relied on appropriate authority (i.e. the DOT and record evidence), the Commissioner's decision may not be disturbed. *See Wambolt v. Colvin*, No. 13-cv-070, 2014 U.S. Dist. LEXIS 42690, at *25-26 (E.D.Wa. Mar. 28, 2014).[4]

### D.    Step Five Analysis

The ALJ also found, in the alternative, that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 35). After being asked to assume a hypothetical claimant with Plaintiff's RFC, the vocational expert opined that such a claimant could perform the following occupations: mail clerk, electrical assembler, and survey worker (T at 35).[5]  Plaintiff

---

[4] It should also be noted that the vocational expert, referencing the DOT and Plaintiff's testimony, explained that the customer service representative job required only a sedentary exertional level. (T at 34, 83).  This indicates that Plaintiff could still perform this past relevant work even if his exertional abilities were more limited than assessed by the ALJ.

[5] All of these jobs are at a light exertional level. For some claimants, a sedentary vs. a light exertional limitation makes a difference in determining whether they are disabled under the Grid framework. That's not an issue here because Plaintiff is not disabled under the Grid analysis either way.  However, a straight Grid analysis can't be used here because of the claimant's non-exertional limitations.  Thus, it was appropriate for the ALJ to use a vocational expert.  As noted above, the vocational expert testified that Plaintiff could perform a customer service representative

argues that the ALJ should have included additional limitations (e.g. sedentary work, frequent/sudden access to a bathroom, multiple monthly absences, need to lie down) in the hypothetical.    However, because the ALJ's RFC analysis is supported by substantial evidence, this argument is unpersuasive. *See Hall v. Colvin*, No. CV-13-0043, 2014 U.S. Dist. LEXIS 45006, at *24-25 (E.D. Wash. Mar. 31, 2014)("A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.")(citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

        This Court is mindful that there is some evidence to suggest that Plaintiff is limited to sedentary work, e.g. the opinions of Dr. Bassett and Dr. Asriel (both treating physicians) as well as the non-examining consultant and the "other source" opinions.    However, there is also evidence supporting the ALJ's conclusion that Plaintiff could perform light work with some non-exertional limitations, e.g. the assessments of Dr. Henley and Dr. Pace (treating physicians with an orthopedic specialty), the treatment notes (including Dr. Bassett's treatment notes, which post-dated his opinion and indicated that Plaintiff's ulcerative colitis was significant

---

job at the sedentary level.  In any event, it should be noted that the ALJ was not technically required to perform the step five analysis, as the step four finding that Plaintiff could perform his past relevant work was supported by substantial evidence for the reasons outlined above.

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

improved with treatment), the lack of medical support for several of the "sedentary work" opinions, and the x-ray results and clinical findings.  As a matter of law, if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  The ALJ is charged with resolving conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).  This Court must uphold the ALJ's decision even if the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).


## V. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB

## VI. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 16**, is **DENIED.**

The Commissioner's motion for summary judgment, **Docket No. 17**, is **GRANTED**.

The District Court Executive is directed to file this Decision and Order, provide copies to counsel, enter judgment in favor of the Commissioner and **CLOSE** the case.

DATED this 22nd day of July, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – HIXSON v COLVIN 13-CV-05091-VEB